# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JAVLE R. RANDLE, | ) | 1:07-cv-01168-SMS |
| | ) | |
| Plaintiff, | ) | DECISION AND ORDER DENYING |
| v. | ) | PLAINTIFF'S SOCIAL SECURITY |
| | ) | COMPLAINT (DOC. 2) |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF SOCIAL | ) | ORDER DIRECTING THE ENTRY OF |
| SECURITY, | ) | JUDGMENT FOR DEFENDANT MICHAEL J. |
| | ) | ASTRUE, COMMISSIONER OF SOCIAL |
| Defendant. | ) | SECURITY, AND AGAINST PLAINTIFF |
| | ) | JAVLE R. RANDLE |
| | ) | |

Plaintiff is proceeding in forma pauperis and with counsel with an action seeking judicial review of an unfavorable decision of the Commissioner of Social Security (Commissioner) with respect to Social Security benefits. Pursuant to 28 U.S.C. § 636(c)(1), the parties have consented to the jurisdiction of the Magistrate Judge to conduct all proceedings in this matter, including ordering the entry of final judgment.[1] The matter is currently before the Court on the parties' briefs, which have been submitted without oral argument to the Honorable Sandra M. Snyder, United States Magistrate Judge.

---

[1] On September 25, 2008, District Judge Oliver W. Wanger reassigned the case for all purposes to the undersigned Magistrate Judge.

I. <u>Procedural Summary</u>

On September 11, 2002, Plaintiff protectively filed applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), finally alleging disability since July 14, 2003. (A.R. 70-80, 16.) Although Plaintiff's application was initially denied at the hearing level in December 2005 (A.R. 408-10), the Appeals Council remanded the case by order dated March 31, 2006, and Plaintiff appeared with counsel and testified at a hearing held on December 4, 2006, before the Honorable Bert C. Hoffman, Jr., administrative law judge (ALJ) of the Social Security Administration (SSA). (A.R. 16, 563-88.) The ALJ decided that Plaintiff was not disabled in a decision dated February 12, 2007. (A.R. 16-25.)

The ALJ found that Plaintiff had severe impairments of a seizure disorder and borderline intellectual functioning; she had no restriction of activities of daily living, no difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace; nevertheless, Plaintiff retained the residual functional capacity (RFC) to perform unskilled work at all exertional levels not involving driving or working around machinery or at heights. (A.R. 19.) After the Appeals Council denied Plaintiff's request for review on June 6, 2007, Plaintiff filed the complaint in this action on August 6, 2007. (<u>Id.</u> at 9-11.) Briefing commenced on March 12, 2008, and was completed with the filing on April 25, 2008, of Plaintiff's reply to Defendant's opposition.

II. <u>Scope and Standard of Review</u>

Congress has provided a limited scope of judicial review of

1  the Commissioner's decision to deny benefits under the Act. In

2  reviewing findings of fact with respect to such determinations,

3  the Court must determine whether the decision of the Commissioner

4  is supported by substantial evidence. 42 U.S.C. § 405(g).

5  Substantial evidence means "more than a mere scintilla,"

6  Richardson v. Perales, 402 U.S. 389, 402 (1971), but less than a

7  preponderance, Sorenson v. Weinberger, 514 F.2d 1112, 1119, n. 10

8  (9th Cir. 1975). It is "such relevant evidence as a reasonable

9  mind might accept as adequate to support a conclusion."

10  Richardson, 402 U.S. at 401. The Court must consider the record

11  as a whole, weighing both the evidence that supports and the

12  evidence that detracts from the Commissioner's conclusion; it may

13  not simply isolate a portion of evidence that supports the

14  decision. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir.

15  2006); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).

16  It is immaterial that the evidence would support a finding

17  contrary to that reached by the Commissioner; the determination

18  of the Commissioner as to a factual matter will stand if

19  supported by substantial evidence because it is the

20  Commissioner's job, and not the Court's, to resolve conflicts in

21  the evidence. Sorenson v. Weinberger, 514 F.2d 1112, 1119 (9th

22  Cir. 1975).

23      In weighing the evidence and making findings, the

24  Commissioner must apply the proper legal standards. Burkhart v.

25  Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must

26  review the whole record and uphold the Commissioner's

27  determination that the claimant is not disabled if the

28  Commissioner applied the proper legal standards, and if the

3

1  Commissioner's findings are supported by substantial evidence.

2  See, Sanchez v. Secretary of Health and Human Services, 812 F.2d

3  509, 510 (9th Cir. 1987); Jones v. Heckler, 760 F.2d at 995. If

4  the Court concludes that the ALJ did not use the proper legal

5  standard, the matter will be remanded to permit application of

6  the appropriate standard. Cooper v. Bowen, 885 F.2d 557, 561 (9th

7  Cir. 1987).

8        III. Disability

9        In order to qualify for benefits, a claimant must establish

10 that she is unable to engage in substantial gainful activity due

11 to a medically determinable physical or mental impairment which

12 has lasted or can be expected to last for a continuous period of

13 not less than twelve months. 42 U.S.C. §§ 416(i), 1382c(a)(3)(A).

14 A claimant must demonstrate a physical or mental impairment of

15 such severity that the claimant is not only unable to do the

16 claimant's previous work, but cannot, considering age, education,

17 and work experience, engage in any other kind of substantial

18 gainful work which exists in the national economy. 42 U.S.C.

19 1382c(a)(3)(B); Quang Van Han v. Bowen, 882 F.2d 1453, 1456 (9th

20 Cir. 1989). The burden of establishing a disability is initially

21 on the claimant, who must prove that the claimant is unable to

22 return to his or her former type of work; the burden then shifts

23 to the Commissioner to identify other jobs that the claimant is

24 capable of performing considering the claimant's residual

25 functional capacity, as well as her age, education and last

26 fifteen years of work experience. Terry v. Sullivan, 903 F.2d

27 1273, 1275 (9th Cir. 1990).

28       The regulations provide that the ALJ must make specific

4

sequential determinations in the process of evaluating a
disability: 1) whether the applicant engaged in substantial
gainful activity since the alleged date of the onset of the
impairment, 20 C.F.R. § 404.1520 (2007);[2] 2) whether solely on the
basis of the medical evidence the claimed impairment is severe,
that is, of a magnitude sufficient to limit significantly the
individual's physical or mental ability to do basic work
activities, 20 C.F.R. § 404.1520(c); 3) whether solely on the
basis of medical evidence the impairment equals or exceeds in
severity certain impairments described in Appendix I of the
regulations, 20 C.F.R. § 404.1520(d); 4) whether the applicant
has sufficient residual functional capacity, defined as what an
individual can still do despite limitations, to perform the
applicant's past work, 20 C.F.R. §§ 404.1520(e), 404.1545(a); and
5) whether on the basis of the applicant's age, education, work
experience, and residual functional capacity, the applicant can
perform any other gainful and substantial work within the
economy, 20 C.F.R. § 404.1520(f).

     With respect to SSI, the five-step evaluation process is
essentially the same. <u>See</u> 20 C.F.R. § 416.920.

     IV. <u>The ALJ's Finding that Plaintiff's Mental Impairments
         Did not Meet or Medically Equal a Listing</u>

     Plaintiff argues that the ALJ failed to make sufficient
findings to show that he actually considered equivalence when he
determined that Plaintiff did not have an impairment or
combination thereof that met or equaled a listed impairment.
(A.R. 19.) Plaintiff contends that the ALJ gave an inadequate,

---

[2] All references are to the 2007 version of the Code of Federal Regulations unless otherwise noted.

conclusory statement, and he should have used a medical expert to

determine whether Plaintiff's impairments were medically

equivalent to Listing 12.05(C).

The ALJ stated:

> The impairments listed in Appendix 1, Subpart P, CFR Part
> 404, which are most nearly applicable to the claimant's
> medically determinable impairments, particularly
> Sections 11.03 and 12.05, have been reviewed and are not
> met or medically equaled under the facts of this case.

(A.R. 19.)

Part 404, Subpart P, Appendix 1, section 12.05, states in

pertinent part:

> 12.05 *Mental Retardation*: Mental retardation refers
> to significantly subaverage general intellectual
> functioning with deficits in adaptive functioning
> initially manifested during the developmental
> period; i.e., the evidence demonstrates or supports
> onset of the impairment before age 22.
>    The required level of severity for this disorder
> is met when the requirements in A, B, C, or D
> are satisfied.
>    ....
> C. A valid verbal, performance, or full scale IQ
> of 60 through 70 and a physical or other mental
> impairment imposing an additional and significant
> work-related limitation or function....

Plaintiff argues that the listing is satisfied by the

following evidence: 1) The ALJ's finding that Plaintiff suffered

from a physical condition that imposed significant work-related

limitations of function, namely, a seizure disorder; 2) the

report of Michael Musacco, Ph.D., practitioner in clinical and

forensic psychology, of August 2006, reflecting no diagnosis on

Axis I, a "provisional diagnosis" of borderline intellectual

functioning on Axis II, and reporting scores on the Wechsler

Adult Intelligence Scale, Third edition (WAIS-III) of full scale

IQ of 63, performance IQ of 68, and verbal IQ of 64 (A.R. 525,

523-27); and 3) Plaintiff's testimony that she participated in special education classes through high school (A.R. 541-42), reports to consulting examiner Dr. Musacco in 2003 and 2006 that she had been in special education classes and obtained above-average grades, graduating frm Bakersfield High School in 1993 (A.R. 281, 523), and reports to other sources that she was involved in special education from fifth through twelfth grades, was very slow at reading and writing, and had significant learning disabilities but desired to attend college (A.R. 385).

It is Plaintiff's burden to establish that his impairment met a listing. <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146 n.5 (1987). Mere diagnosis of a listed impairment is not sufficient to sustain a finding of disability; there must also be the findings required in the listing. <u>Young v. Sullivan</u>, 911 F.2d 180, 183 (9th Cir. 1990); 20 C.F.R. § 416.925(d). Generally, specific medical findings are needed to support the diagnosis and the required level of severity. 20 C.F.R. §§ 404.1525(c)-(d), 416.925(c). The Commissioner is not required to state why a claimant failed to satisfy every different section of the listing of impairments; rather, it is sufficient to evaluate the evidence upon which the ultimate factual conclusions are based. Otherwise, an undue burden would be put on the social security disability process. <u>Gonzales v. Sullivan</u>, 914 F.2d 1197, 1200-01 (9th Cir. 1990). It is sufficient for an ALJ to summarize the pertinent record, including the doctor's information regarding symptoms and the claimant's testimony, and to make specific findings essential to the conclusion such that a reviewing court may know the basis for the conclusion. <u>Gonzalez v. Sullivan</u>, 914 F.2d 1197, 1200-01 (9th

Cir. 1990).

Here, Plaintiff did not establish that she had been diagnosed with mental retardation. Dr. Musacco, the expert on whose opinion Plaintiff relies in contending that she established medical equivalence, expressly stated that Plaintiff did not have even mild mental retardation. As Defendant notes, the precise diagnosis must be shown. Section 12.00 of Part 404, Subpart P, Appendix 1 expressly states:

> We will find that you have a listed impairment if the diagnostic description in the introductory paragraph and the criteria of both paragraphs A and B (or A and C, when appropriate) of the listed impairment are satisfied.

Further, it states:

> The criteria in paragraph A substantiate medically the presence of a particular mental disorder. Specific symptoms, signs, and laboratory findings in the paragraph A criteria of any of the listings in this section cannot be considered in isolation from the description of the mental disorder contained at the beginning of each listing category.

Finally, it is stated:

> The criteria in paragraphs B and C describe impairment-related functional limitations that are incompatible with the ability to do any gainful activity. The functional limitations in paragraphs B and C must be the result of the mental disorder described in the diagnostic description, that is manifested by the medical findings in paragraph A.
> The structure of the listing for mental retardation (12.05) is different from that of the other mental disorders listings. Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation. It also contains four sets of criteria (paragraphs A through D). If your impairment satisfied the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing....

Id. at § 12.00(A).

The Court notes that Dr. Musacco expressly emphasized that he did not diagnose Plaintiff with mental retardation:

> The scores on this test reveal mild and pervasive deficits in her intelligence. There is no evidence of a significant pattern of strengths and weaknesses in her intellectual functioning (sic) instead, the scores suggest that she demonstrates pervasive and mild deficits in her intelligence.
> ....
> On Axis II I offered the diagnosis of Borderline Intellectual Functioning. Although the claimant's full IQ score fell in the mildly impaired range, she did not demonstrate evidence of significant deficits in her adaptive functioning as required for the diagnosis of Mild Mental Retardation. Never the less, the claimant's testing results reveal significant to near significant deficits in her intelligence and memory. Despite these factors, the claimant was able to hold a relatively long-term employment. Indicating (sic) that deficits in her intelligence did not prevent her from responding to the demands of usual work situations or dealing with changes in a routine work setting.
> ....
> The claimant is able to understand, carry out, and remember simple instructions. Her work history reveals the ability to respond appropriately to co-workers, supervisors, and the public. However, she demonstrated significant deficits in her intelligence, which will impact her ability to deal with changes in a routine work setting. (Emphasis added.)

(A.R. 526-27.)

Although Defendant cites many authorities to the contrary,[3] it has been held in other circuits that an express diagnosis of mental retardation is not required to meet Listing 12.05, and a diagnosis of borderline intellectual functioning may be sufficient. Christner v. Astrue, 498 F.3d 790, 793 (8th Cir. 2007). This holding has been relied upon by courts in this

---

[3] Authorities from several other circuits are cited that reflect that borderline intellectual functioning is different from mental retardation with respect to diagnoses, and that the latter involves additional limitations in adaptive behavior. See, Cox v. Astrue, 495 F.3d 614, 618 (8th Cir. 2007); Neal v. Barhnart, 405 F.3d 685, 689 (8th Cir. 2005), Elam v. Commissioner, 348 F.3d 124, 126 (6th Cir. 2003), and Marggard v. Apfel, 167 F.3d 376, 380 (7th Cir. 1999). (Defendant's Brief p. 7.)

circuit. <u>See</u>, <u>Lewis v. Astrue</u>, 2008 WL 191415, *5 (January 22, 2008, N.D.Cal). Thus, it has been held sufficient, with respect to the minimum level of severity needed for mental retardation, for a plaintiff to demonstrate a score within the stated range plus another impairment. <u>Id.</u>

However, in addition to the score and the other limiting impairment, the introductory paragraph with the diagnostic description for mental retardation must be satisfied. This expressly includes not only significantly subaverage general intellectual functioning, but also deficits in adaptive functioning initially manifested before age twenty-two. <u>Hartman v. Astrue</u>, 2008 WL 4089255, *11-12 (W.D.Wash August 29, 2008).

Here, the expert in question expressly concluded that even though he considered Plaintiff's IQ scores, he concluded that she was not even mildly mentally retarded because of the absence of deficits in adaptive functioning, as manifested by Plaintiff's earlier employment and her activities of daily living. <u>See</u>, <u>Foster v. Halter</u>, 279 F.3d 348, 355 (6th Cir. 2001) (deficit in adaptive functioning also required in order to receive benefits under Listing 12.05).

Accordingly, the evidence relied on by Plaintiff to subvert the ALJ's conclusion does not do so; rather, that evidence supports that ALJ's conclusion that Plaintiff did not meet the listing. The ALJ expressly noted that Dr. Musacco stated that Plaintiff made above-average grades in her special education classes; had no mental health treatment; performed all activities of daily living except driving, including handling her finances independently; had an essentially normal mental status exam; had

relatively stable emotional functioning; and that her mental
deficits did not prevent Plaintiff from responding to the demands
of usual work situations or dealing with changes in a routine
setting in her former long-term employment. (A.R. 23.) The ALJ
noted the apparently inconsistent note from Dr. Musacco that
Plaintiff's significant deficits in her intelligence would impact
her ability to deal with changes in a routine work setting. (A.R.
23.) However, because that statement was also contradicted by
Plaintiff's own wide range of activities of daily living and her
past ability to work with the same level of intellectual
functioning, the ALJ expressly assigned it little weight. (<u>Id.</u>;
<u>id.</u> at pp. 281-82 [Plaintiff, born in 1975, obtained above-
average grades in special education classes, had good
relationships with her peers without any disciplinary procedures,
lived with her boyfriend and son and cleaned house, completed
household chores, was independent in activities of daily living,
rode the bus, played sports and enjoyed discussing sports, had no
history of mental health treatment, and had held several jobs in
her life, including being a cashier for the Kern County
Department of Human Services, a cook in the cafeteria for three
years, and a cook and cashier for other employers until she lost
her employment earlier in the year because of her seizures], 524
[Plaintiff was employed on a regular basis from 1993 through
2002, when her seizures caused her to retire, and she cooked,
shopped for groceries, and managed the household finances
independently], 557 [testimony that she had an active social
life], 560 [testimony that she cooked meals and enjoyed reading
magazines and papers, including sports].)

11

1      It was Plaintiff's burden to establish that her impairment
2  met a listing. The Court notes that substantial evidence, in the
3  form of state agency physicians' opinions, supported the
4  determination that Plaintiff was able to understand, remember,
5  and perform simple job instructions; sustain concentration,
6  persistence, pace, and social interaction adequate for simple,
7  repetitive tasks; and adapt to changes in the workplace. (A.R.
8  284-87.) The ALJ found that Plaintiff did not meet her burden.
9  The ALJ recited the key evidence from Dr. Musacco. Viewed as a
10  whole, the ALJ's decision states specific, legitimate reasons,
11  supported by substantial evidence, for concluding that Plaintiff
12  did not meet listing 12.05.

13      Because the evidence on which Plaintiff relies supported the
14  ALJ's finding, the Court finds it unnecessary to consider whether
15  or not Plaintiff met the other prong of the listing concerning
16  manifesting the impairment at a developmental stage of life.
17  (A.R. 526.)

18      Further, the Court rejects Plaintiff's contention that the
19  ALJ should have obtained additional medical evidence on the
20  question of Plaintiff's meeting the listing. An ALJ's duty to
21  develop the record arises where the record before the ALJ is
22  ambiguous or inadequate to allow for proper evaluation of the
23  evidence. 20 C.F.R. §§ 404.1512(e) and 416.912(e); Mayes v.
24  Massanari, 262 F.3d 963, 968 (9th Cir. 2001). Here, the record
25  evidence was sufficient for the ALJ to come to an informed
26  conclusion.

27      V. Plaintiff's RFC

28      Plaintiff argues that the ALJ's limitation of Plaintiff to

12

unskilled work was not sufficient to account for Plaintiff's
moderate deficiencies of concentration, persistence, or pace.
Although Plaintiff does not challenge the finding that she can
perform unskilled work, she argues that she lacks the ability to
sustain focused attention sufficiently long to permit the timely
and appropriate completion of tasks. Further, Plaintiff's
moderate limitation in concentration, persistence, or pace was
not propounded to a vocational expert, and thus the evidence is
insufficient to support the ALJ's finding at step five that
Plaintiff could perform other work.

At step two, the ALJ found that Plaintiff had severe
impairments of a seizure disorder and borderline intellectual
functioning; Plaintiff had moderate difficulties in maintaining
concentration, persistence, or pace. (A.R. 19.) The ALJ concluded
that Plaintiff had the RFC to perform unskilled work at all
exertional levels not involving driving or working around
machinery or at heights. (A.R. 19.) Plaintiff was unable to
perform her past relevant work as a fast food cashier. (A.R. 23.)
However, pursuant to section 204.00 of the Medical-Vocational
Guidelines, as a younger individual with a high school education
and the ability to communicate in English, and based on the
testimony of the vocational expert (VE) and consistent
information in the Dictionary of Occupational Titles, Plaintiff
could perform jobs that existed in significant numbers in the
national economy, including cleaner (10,000 positions in
California), grader (4,000 jobs in California), and packer (6,000
positions in California). (A.R. 24.)

Non-examining state agency consulting physicians Drs. Luu

and Bugg concluded in January 2004 in a mental residual
functional capacity assessment (A.R. 284-87) that with respect to
sustained concentration and persistence, Plaintiff had the
ability to understand, remember, and carry out very short and
simple instructions, but Plaintiff was moderately limited in the
ability to understand, remember, and carry out detailed
instructions, to maintain attention and concentration for
extended periods, and to complete a normal workday and workweek
without interruptions from psychologically based symptoms and to
perform at a consistent pace without an unreasonable number and
length of rest periods. (A.R. 284-85.) However, Plaintiff was not
significantly limited in the ability to perform activities within
a schedule, sustain an ordinary routine without special
supervision, and work with others without being distracted. (A.R.
284.) The doctors expressly concluded that Plaintiff was able to
sustain concentration, persistence, and pace for simple,
repetitive tasks. (A.R. 286.) Further, the consulting examiner,
Dr. Musacco, credited by the ALJ, concluded that Plaintiff was
able to understand, carry out, and remember simple and repetitive
instructions. (A.R. 283.)

In propounding questions to the VE, the ALJ referred to
Plaintiff's seizures, and to Dr. Musacco's limitations of a
slight impairment in the ability to remember and carry out short
and simple instructions, make judgments in simple, work-related
processes, and act appropriately with others, and a slight to
moderate problem with responding to changes in the routine work
setting (moderately limited but still capable of functioning
satisfactorily). The VE testified that such a person could

14

perform simple, repetitive tasks, which included the light, unskilled positions of cleaner, grader, and hand packer. (A.R. 582-84.) The ALJ also posed the question positing inability one to two hours a day to concentrate, and the VE testified she would not be able to perform the work. (A.R. 585-86.)

In the present case, although some of the evidence supported a moderate limit in concentration, persistence, or pace, the medical evidence relied on by the ALJ, the sufficiency of which is not challenged by Plaintiff, clearly supported a limitation to simple, repetitive tasks. These limits were posed to the VE, who testified that Plaintiff could perform specific, unskilled positions. Under these circumstances, where the medical opinions reflected and supported an ability to perform simple tasks, the ALJ's questioning of the VE adequately captured the restrictions related to concentration, persistence, or pace. Compare, Stubbs-Danielson v. Astrue, – F.3d - , 2008 WL 3876589, *3-5 (9th Cir. August 22, 2008).

VI. Disposition

Based on the foregoing, the Court concludes that the ALJ's decision was supported by substantial evidence in the record as a whole and was based on the application of correct legal standards.

Accordingly, the Court AFFIRMS the administrative decision of the Defendant Commissioner of Social Security and DENIES Plaintiff's Social Security complaint.

/////

//////

////////

1      The Clerk of the Court IS DIRECTED to enter judgment for

2  Defendant Michael J. Astrue, Commissioner of Social Security,

3  and against Plaintiff Javle R. Randle.

4

5  IT IS SO ORDERED.

6  **Dated:    October 6, 2008              /s/ Sandra M. Snyder**
                                    UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28